R ✓ NOD

ORIGINAL

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

14113

| | | |
|---|---|---|
| BILLY JAMES SMITH, | § | |
| Plaintiff. | § | 3-07CV1413-R |
| | § | Civil Action No.: ________ |
| vs. | § | JURY TRIAL DEMANDED |
| THE CITY OF DALLAS; JAMES MERCER, in his individual and official capacity; DONALD MCMILLION, in his individual and official capacity; MICHAEL KEMP, in his individual and official capacity; AARON ANDERSON, in his individual and official capacity, and HOWARD WILSON, | § | U.S. DISTRICT COURT NORTHERN DISTRICT OF TEXAS FILED AUG 16 2007 CLERK, U.S. DISTRICT COURT By NB Deputy |
| Defendants. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

**COMES NOW** Plaintiff, BILLY JAMES SMITH, by and through his counsel, Kevin Glasheen, of Glasheen, Valles & Dehoyos, L.L.P., complaining against Defendants, and alleges as follows:

**NATURE OF THE ACTION**

1. This is a civil rights and malicious prosecution action for money damages arising under the Constitution of the United States, particularly the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States, under the laws of the United States, particularly the Civil Rights Act, 42 U.S.C. §§ 1983, 1985, and 1988, and under the laws of the State of Texas, resulting from the wrongful imprisonment, prosecution, and conviction of

Billy James Smith, as a result of the conduct of the Dallas Police Department, its police officers, employees, and agents, and Howard Wilson.

2. Beyond compensating Mr. Smith for these continuing injuries and the nearly twenty years stolen from him, this action seeks to redress the unlawful municipal policies and practices pursuant to which defendants, acting under color of law both independently and in concert, violated his clearly established rights as guaranteed by the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and the laws of the State of Texas.

## DEMAND FOR A JURY TRIAL

3. Plaintiff demands a jury trial.

## JURISDICTION

4. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343, and on the pendent jurisdiction of this Court to entertain claims arising under state law.

## VENUE

5. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Northern District of Texas, Dallas Division, the judicial district in which the claims arose and in which the municipal defendant is located.

## PARTIES

6. Plaintiff BILLY JAMES SMITH is, and at all times material to this Complaint was, a resident of the State of Texas. He remains a resident of Texas and resides in Dallas, Texas.

7. Defendant JAMES MERCER was, at all times material to this Complaint, an officer employed by the Defendant CITY OF DALLAS. Furthermore, Defendant is, and at all times material to this Complaint was, a resident of the State of Texas. Defendant remains a resident of Texas and resides in Dallas, Texas.

8. Defendant DONALD MCMILLION was, at all times material to this Complaint, an officer employed by the Defendant CITY OF DALLAS. Furthermore, Defendant is, and at all times material to this Complaint was, a resident of the State of Texas. He remains a resident of Texas and resides in Desoto, Texas.

9. Defendant MICHAEL KEMP was, at all times material to this Complaint, an officer employed by the Defendant CITY OF DALLAS. Furthermore, Defendant is, and at all times material to this Complaint was, a resident of the State of Texas. He remains a resident of Texas and resides in Waxahachie, Texas.

10. Defendant AARON ANDERSON was, at all times material to this Complaint, an investigator and officer employed by the Defendant CITY OF DALLAS. Furthermore, Defendant is, and at all times material to this Complaint was, a resident of the State of Texas. Defendant remains a resident of Texas and resides in Dallas, Texas.

11. Defendant HOWARD WILSON was, at all times material to this Complaint, an attorney licensed in Texas acting in his duty as a criminal defense attorney for Plaintiff. Furthermore, Defendant is, and at all times material to this Complaint was, a resident of the State of Texas. He remains a resident of Texas and resides in Georgetown, Texas.

12. Defendant CITY OF DALLAS is incorporated as a municipality and, at all times material to this Complaint, was the public employer of JAMES MERCER, DONALD MCMILLION, MICHAEL KEMP, and AARON ANDERSON.

## CONDITIONS PRECEDENT

13. All conditions precedent have been performed or have occurred.

## FACTS

14. At all times relevant to the acts alleged in this complaint, Defendants James Mercer, Donald McMillion, Michael Kemp, and Aaron Anderson were acting under the color of the statutes, ordinances, regulations, customs, and usages of the Defendant City of Dallas and the State of Texas and under the authority of their respective offices as police officers.

15. Plaintiff Billy Smith served 19 years and 11 months in jail and prison for crimes which he did not commit.

16. On August 7, 1986, Mr. Smith was arrested for aggravated sexual assault and on February 5, 1987, he was convicted and subsequently sentenced to life in prison.

17. During the early morning hours of August 7, 1986, SB was washing clothes in the laundry room of an apartment complex then located at 711 E. Colorado in Dallas, Texas. According to SB, sometime between midnight and 3:00 a.m. a lone male entered the laundry room with a knife and asked her for money. She responded that she had none.

18. As SB later testified, this man then placed a hat over her face and forced her out of the laundry room and into an empty and dark field adjacent to the apartment complex. He made her lay down in some grass where he sexually assaulted her. The man then left her lying in the grass as he escaped in the darkness.

19. While the multiple accounts given by SB and her boyfriend, Marvin Clayton, differ as to what occurred immediately following, it is clear that eventually SB informed Clayton that she had been sexually assaulted. SB then described this man to Marvin Clayton as being sweaty,

with rough hair, and wearing white shorts, white tennis shoes, a black hat, and a blue scrub top for a shirt. Other than the clothes he wore, she could give no better physical description of the man.

20. Marvin Clayton, in addition to being SB's boyfriend, was also the manager of the apartment complex then located at 711 E. Colorado. Upon hearing her report, he told her he knew who fit that description. After SB had taken a shower, Marvin Clayton then took her back to the apartment complex and had her stand under the second floor walkway while he went upstairs and knocked on the door of Apartment 202, occupied by Elizabeth Davis and her brother, Plaintiff Billy Smith.

21. At about 3:30 a.m. on the morning of August 7, 1986, it was dark outside the apartment occupied by Billy Smith. A few days earlier a storm had knocked out several of the lights, and the closest burning light—several feet away from the door of Apartment 202—now pointed directly downward instead of sideways as it had previously. The prior evening, several residents of the apartment complex had been discussing Marvin Clayton's failure at getting the lights back on in front of each door. It was, therefore, very dark outside Apartment 202 when Marvin Clayton knocked on the door at about 3:30 a.m. and roused Billy Smith from his sleep.

22. Billy Smith answered the door and Marvin Clayton explained to him that his girlfriend had been assaulted and he was going door-to-door asking if anyone had heard anything. He asked Billy to step outside. As Billy stood speaking to Marvin Clayton, he heard a sound below and leaned over the balcony for a brief second. In the darkness he could make out the shape of a female form, but it was too dark to identify the person who stood directly beneath him.

23. After Billy returned to the apartment, his sister asked him what Marvin Clayton had

wanted. She had been awake, and unable to sleep for some time prior, going through letters she had received from the Internal Revenue Service. He told her and returned to his sleep on the couch while Elizabeth Davis returned to her affairs in the kitchen.

24. Outside, Marvin Clayton asked SB if Billy Smith was the man that had attacked her. According to both, she identified Billy Smith as her attacker. Another two to three hours would pass, however, before Marvin Clayton finally called the police to report the assault. During this time, SB managed to finish washing all of the clothes that she had begun hours earlier.

25. At about 6:30 a.m., Defendant Michael Kemp was the first officer to respond to a report of an aggravated sexual assault at 711 E. Colorado. Upon his arrival, Marvin Clayton recounted the entire story on behalf of SB for Defendant Kemp's benefit. SB stood by listening. When Clayton was finished, Defendant Kemp asked SB if she was positive Billy Smith was the man that had assaulted her. She agreed and Defendant Kemp placed SB in his patrol car where he questioned her further.

26. Sometime later, Defendant Donald McMillion arrived and, while Kemp continued to question SB, he again questioned Marvin Clayton. When the officers had finished, they conferred but were unable to determine whether they had probable cause to arrest Billy Smith. They then requested assistance from Defendant Mercer.

27. Defendant Mercer arrived and had the situation explained to him by Defendants Kemp and McMillion. Mercer then spoke to SB and decided they had reason to detain Billy Smith. Between 7:00 a.m. and 7:30 a.m., the three officers then approached Apartment 202 together.

28. According to testimony given by all three officers at Billy Smith's subsequent parole revocation hearing, SB only described her attacker as a black male wearing white shorts, white

tennis shoes, a blue scrub top for a shirt, and a black hat. She gave no other physical description. According to the testimony of Defendants Kemp and Anderson, SB described the knife used by her attacker as having an all silver handle and an all silver blade. According to Defendant Mercer, SB described the handle as silver and maroon.

29. Upon hearing a knock at the door some four hours after Marvin Clayton's visit, Elizabeth Davis told Billy Smith she would answer the door this time. When she did, she was greeted by the three officers and asked if Mr. Smith was available to speak with the officers outside. Billy Smith stepped out onto the balcony and the officers explained that he had been accused of aggravated sexual assault. SB sat in a patrol car below.

30. Defendant McMillion then asked Elizabeth Davis if he could step inside to speak with her. She consented to being questioned. Defendant McMillion, however, stepped into the dark living room and immediately pulled out his flashlight. Instead of asking to look around and/or explaining what he was looking for, he shined his light around the apartment until he found three knives. Defendants Mercer and Kemp remained on the balcony speaking with Billy Smith.

31. After finding the three knives, Defendant McMillion noticed a full clothes hamper. He dug through the clothes hamper until he was able to locate a pair of white shorts. He then looked around the apartment further until he found a pair of white tennis shoes and a black hat. He never located a blue scrub top shirt. Instead, he assembled the shorts, shoes, hat, and knives and called Defendant Mercer in to show him.

32. Defendant McMillion then took the three knives down to the patrol car where SB sat and showed her all three knives. After viewing all three, SB chose a knife with a silver handle and a brown wood in-lay as the knife the attacker had used against her. Defendant McMillion

kept this knife and returned the other two to the apartment. Only Defendant McMillion would later testify that SB described the knife as having a silver handle with a brown wood in-lay.

33. Defendant Mercer then went downstairs and asked SB if Billy Smith, the man standing on the balcony above, was the person who had attacked her several hours earlier. She said he was. Defendant Mercer returned to the balcony and had Billy Smith placed under arrest. Mr. Smith was subsequently led downstairs in handcuffs, past SB and placed in Defendant Kemp's patrol car.

34. Defendant McMillion then handed custody of the "evidence" he had collected in Apartment 202 to Defendant Kemp. Defendant McMillion drove SB to a hospital and Defendant Kemp followed, taking the evidence and Billy Smith to the police station. Defendant Kemp, and Kemp alone, filed the only incident report regarding the investigation and arrest of Billy Smith on the morning of August 7, 1986.

35. At the station, Billy Smith was questioned for about two hours by two investigators. During questioning, Mr. Smith maintained his innocence. He requested a physical line-up be conducted. The investigators told him this was not possible at that time. Mr. Smith also requested the investigators perform a polygraph on him and he told them he wanted to speak with an attorney. The investigators told him he could not have a polygraph if he also wanted an attorney, and that he would have to choose.

36. After Billy Smith continued to assert his right to counsel, the investigators brought him before a magistrate to be arraigned. He was given his rights again and, again, he asked to speak with an attorney. Instead, he was placed in lock-up. He would remain there for more than 30 days without speaking with counsel and counsel was only appointed after a fellow inmate finally helped Mr. Smith prepare a handwritten letter to the court asking for the appointment of

counsel.

37. Originally, Jerry Birdwell was appointed as counsel for Billy Smith. While representing Mr. Smith for only a short time, he subpoenaed two witnesses for him: his sister Elizabeth Davis, and a neighbor, Leon Stenson. He also requested that blood and hair samples be taken from Mr. Smith and compared against the evidence recovered from SB. In October, 1986, on the day Mr. Smith was supposed to have been taken to Parkland Hospital to have the samples taken, Billy Smith called Birdwell to ask why this had not occurred. Birdwell informed him there was no officer available to escort Mr. Smith and that Birdwell would be withdrawing from the case. Birdwell told him another attorney would be appointed to represent him.

38. On February 2, 1987, as the court convened to empanel a jury in The State of Texas v. Billy Smith, Billy Smith met his new counsel, Defendant Howard Wilson, for the first time. As the trial began, despite his requests no polygraph had been administered to Billy Smith, no line-up identification had been conducted, and despite the requests of both Smith and Birdwell, no blood or hair samples had been collected for analysis and comparison.

39. During the trial, the show-up identification of Billy Smith by SB conducted at about 7:30 A.M. on August 7, 1986, under the direction of Defendants Mercer, Kemp, and McMillion, was admitted into evidence. SB testified as to this identification, as did Marvin Clayton and the sole-testifying officer, Defendant McMillion.

40. Leon Stenson, subpoenaed to testify on behalf of Billy Smith, was present at the courthouse on the day the Defense was to present its case. Stenson was prepared to corroborate Billy Smith's testimony regarding the clothing he had worn that day and late into the evening. Stenson would also have corroborated the testimony of Mr. Smith and Elizabeth Davis regarding the absence of lighting at the apartment complex on the night of August 6 and morning of

August 7, 1986. Finally, Stenson was prepared to testify that he was with Billy Smith from about 8:30 p.m. until about 10:30 p.m. on August 6, 1986 when Smith went inside Apartment 202, and that Stenson had remained on the balcony of the apartments until well past midnight. According to Stenson, he never saw Billy Smith exit his apartment between 10:30 p.m. and sometime after midnight, nor heard him exit after that point.

41. Instead of calling Leon Stenson to the stand, Defendant Wilson informed Stenson his testimony would not be needed and he sent Stenson home. Defendant Wilson would shortly thereafter take a position as an assistant district attorney with the Dallas County District Attorney's office.

42. On February 5, 1987, Billy Smith was convicted of the aggravated sexual assault of SB, and he was sentenced to a term of life in prison.

43. On August 7, 2001, Mr. Smith filed a Motion for DNA testing and analysis of available biological evidence. This motion was opposed by the Dallas County District Attorney and subsequently denied by Judge Manny Alvarez in the Criminal District Court No. 5 of Dallas County, Texas. Upon appeal to the Court of Criminal Appeals of Texas, on June 15, 2005, that court determined Judge Alvarez had abused his discretion and remanded the case to the trial court to order DNA testing take place.

44. The resulting testing and analysis established that Billy Smith had been wrongfully convicted, and the State agreed that the DNA testing exonerated Mr. Smith. Mr. Smith became a free man on Friday, July 7, 2006. On December 13, 2006, the Court of Criminal Appeals of Texas issued an opinion setting aside his conviction for aggravated sexual assault. As a result, all charges were dismissed against Mr. Smith based upon his actual innocence.

45. Billy Smith's arrest, detention, prosecution, conviction, and imprisonment were the

product of unconstitutional and unlawful efforts by Defendants Michael Kemp, James Mercer, Donald McMillion, Aaron Anderson, and Howard Wilson, acting individually and in concert, pursuant to municipal policy and custom, to use any means necessary to gain a conviction against a man the officers and Howard Wilson knew was innocent. Acting individually and in concert, the defendants deliberately failed to reveal exculpatory information, employed irreparably suggestive identification procedures, intentionally denied Mr. Smith access to forensics testing prior to trial that could have excluded him as a suspect, fabricated evidence from a witness which was then presented at trial, and deliberately failed to provide an adequate defense at trial.

46. As a direct result of defendants' intentional, bad faith, willful, wanton, reckless, and/or deliberately indifferent acts and omissions, Billy Smith sustained injuries and damages, including, among others, the following: personal injuries, pain and suffering, severe mental anguish; emotional distress; loss of income; infliction of physical illness; inadequate medical care; humiliation, indignities and embarrassment; degradation; and restrictions on all forms of personal freedom including but not limited to diet, sleep, personal contact, educational opportunity, vocational opportunity, athletic opportunity, personal fulfillment, sexual activity, family relations, reading, television, movies, travel, enjoyment, and expression.

**COUNT I – 42 U.S.C § 1983**
**(14th Amendment Due Process)**

47. Plaintiff realleges paragraphs 1 through 46 as though fully set forth herein.

48. As described more fully above, Defendant Officers, while acting under color of law and within the scope of their employment as police officers, violated Plaintiff's right to Due Process by:

A. Manipulating identification evidence and conducting an irreparably harmful and impermissibly suggestive "show-up" identification procedure later presented as evidence against, and used to convict, the innocent Plaintiff;

B. Conducting an unconstitutionally impermissible search by gaining consent of entry into Plaintiff's dwelling on false pretenses and then searching for and seizing items of "mere evidence" that were not in plain view of Defendant Officers and were later introduced as evidence against, and used to convict, the innocent Plaintiff;

C. Manipulating identification evidence regarding the alleged weapon and conducting an irreparably harmful and impermissibly suggestive identification procedure of the weapon later introduced as evidence against, and used to convict, the innocent Plaintiff; and

D. Concealing and intentionally failing to disclose information which would have constituted powerful exculpatory evidence and/or impeachment of testimonial evidence in violation of their duty to report all material exculpatory and impeachment information.

49. Defendant Officers had the ability, opportunity, and constitutional duty to conduct a non-suggestive identification procedure in an effort to both investigate the allegations of SB while ensuring the protection of Plaintiff's constitutional rights.

50. Defendant Officers had the ability, opportunity, and constitutional duty to obtain a warrant prior to conducting a search of the Plaintiff's dwelling place or, in the very least, seek the consent of an appropriate individual to conduct a search of the premises.

51. Defendant Officers actions and previous testimony evidences the fact they had no objectively reasonable belief that would allow Defendant McMillion to seize every knife in plain view in Plaintiff's dwelling and then place each in front of SB in hopes she could identify one

such knife as the weapon used in the assault against her.

52. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally and/or with deliberate indifference to Plaintiff's constitutional rights.

53. As a direct and proximate result of the misconduct described in this Count, SB misidentified Billy Smith as her attacker in court at his trial, otherwise inadmissible evidence was presented at trial, and the Plaintiff was wrongfully convicted of the crime of aggravated sexual assault and sentenced to life in prison.

**COUNT II – 42 U.S.C. § 1983**
**(*Monell* Claim Against the City of Dallas)**

54. Plaintiff realleges paragraphs 1 through 53 as though fully set forth herein.

55. The City of Dallas, by and through its policymakers, created and maintained a custom, policy, or practice of deliberate indifference to the constitutional rights of citizens, by failing to adequately train and supervise and discipline its police officers, including the individual defendants in this case, to ensure that they:

A. Employed proper and non-suggestive identification techniques;

B. Faithfully represented material facts when seeking arrest warrants;

C. Disclosed material exculpatory and impeachment information to prosecutors; and

D. Faithfully conducted permissible searches that would not violate the rights of accused persons.

56. The City of Dallas's failure to train, discipline, and supervise its police officers adequately in these constitutional duties directly and proximately caused the Plaintiff to suffer constitutional deprivations, including his unfair trial, wrongful conviction, and the other grievous

and permanent injuries and damages set forth above.

**COUNT III – 42 U.S.C. § 1985(2)**
**(Conspiracy Claim Against All Defendants)**

57. Plaintiff realleges paragraphs 1 through 46 as though fully set forth herein.

58. Defendants knowingly acted in concert either under color of law or with state actors acting under color of law to deprive Plaintiff of his constitutional rights and to obstruct the due course of justice.

59. The misconduct of Defendants prevented the State from fully performing its own duties of ensuring the Plaintiff received a fair trial and the protections of the due process of the law.

60. In furtherance of the conspiracy, Defendant Wilson committed overt acts of deliberately failing to investigate the Plaintiff's defense; openly rejecting the Plaintiff's appeals to perform any investigation, including but not limited to obtaining photographs of the Plaintiff's apartment complex and interviewing witnesses; intentionally failing to reasonably pursue and ensure Plaintiff's constitutional rights would not be violated by the introduction of otherwise inadmissible evidence at trial; knowingly failing to pursue Plaintiff's requests for the taking of blood and hair samples and comparison of forensic evidence; and deliberately dismissing an essential defense witness. Defendant Wilson was otherwise a willful participant in joint activity with state actors acting under color of law.

61. In furtherance of the conspiracy, Defendant Officers committed overt acts of performing an illegal search of Plaintiff's residence, illegally seizing items of Plaintiff's personal property, subjecting Plaintiff to an unconstitutional impermissibly suggestive witness identification procedure, committing and/or suborning perjury and effecting the denial of

Plaintiff's constitutional and due process rights guaranteed by the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution

62. As a direct and proximate result of the misconduct described in this Count, the Plaintiff suffered constitutional deprivations, including his unfair trial, wrongful conviction, and the other grievous and permanent injuries and damages set forth above.

**COUNT IV – 42 U.S.C. § 1985(3)**
**(Conspiracy Claim Against Defendant Wilson)**

63. Plaintiff realleges paragraphs 1 through 46 as though fully set forth herein.

64. Defendant Wilson knowingly acted in concert with state actors acting under color of law to deprive Plaintiff of his constitutional rights and the equal protection of the law.

65. Plaintiff, as an African-American, is a member of a class traditionally protected by civil rights laws. The actions of Defendant Wilson were invidiously discriminatory and resulted from a deliberate indifference to the rights of the Plaintiff as an African-American.

66. The misconduct of Defendant Wilson prevented the State from fully performing its own duties of ensuring the Plaintiff received a fair trial and the protections of the due process of the law.

67. In furtherance of the conspiracy, Defendant Wilson committed overt acts of deliberately failing to investigate the Plaintiff's defense; openly rejecting the Plaintiff's appeals to perform any investigation, including but not limited to obtaining photographs of the Plaintiff's apartment complex and interviewing witnesses; intentionally failing to reasonably pursue and ensure Plaintiff's constitutional rights would not be violated by the introduction of otherwise inadmissible evidence at trial; knowingly failing to pursue Plaintiff's requests for the taking of blood and hair samples and comparison of forensic evidence; and deliberately dismissing an

essential defense witness. Defendant Wilson was otherwise a willful participant in joint activity with state actors acting under color of law.

68. As a direct and proximate result of the misconduct described in this Count, the Plaintiff suffered constitutional deprivations, including his unfair trial, wrongful conviction, and the other grievous and permanent injuries and damages set forth above.

**COUNT V – State Law Claim**
**(Intentional Infliction of Emotional Distress Against Defendant Officers in their Individual Capacities and Howard Wilson)**

69. Plaintiff realleges paragraphs 1 through 46 as though fully set forth herein.

70. The extreme and outrageous conduct of the individual defendants as set forth above, which was intentional or reckless, proximately caused the Plaintiff severe emotional distress.

**COUNT VI – State Law Claim**
**(Malicious Prosecution Against Defendant Officers in their Individual Capacities)**

71. Plaintiff realleges paragraphs 1 through 53 as though fully set forth herein.

72. Plaintiff was improperly subjected to criminal proceedings for which there was no probable cause. The prosecution of these proceedings was initiated or procured by the Defendant Officers. These proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were terminated in Plaintiff's favor when Plaintiff was adjudged actually innocent of all charges.

73. As a direct and proximate result of the misconduct described in this Count, the Plaintiff suffered and continues to suffer injuries including emotional distress, loss of liberty, and the other grievous and permanent injuries and damages set forth above.

**COUNT VII – State Law Claim**

**(Civil Conspiracy Against All Officers in their Individual Capacities and Howard Wilson)**

74. Plaintiff realleges paragraphs 1 through 46 as though fully set forth herein.

75. Each Defendant was a member of an agreement and combination of two or more persons, and the members of this combination had a meeting of the minds on the object or course of action.

76. The object of this combination of two or more persons was to achieve an unlawful purpose of imprisoning an innocent man by unlawful means through the concealment of evidence, the suborning of perjury, and the denial of Plaintiff's constitutional and due process rights guaranteed by the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

77. At least one of the members of this combination committed an unlawful, overt act to further the object or course of action by the concealment and/or destruction of evidence, the suborning of perjury, and the denial of Plaintiff's constitutional rights.

78. The Plaintiff suffered injury as a proximate result of the wrongful acts.

**EXEMPLARY DAMAGES AGAINST ALL DEFENDANTS**

79. When viewed objectively from the standpoint of Defendants at the time of the occurrence, said Defendants' conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. In addition, Defendants were actually, subjectively aware of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare to others which constitutes "gross neglect" pursuant to § 41.001(7)(B) TEXAS CIVIL PRACTICE AND REMEDIES CODE. Furthermore, Defendants acted with such gross indifference or reckless disregard for the rights of others as to amount to a wanton and

willful action, which constitutes "malice" under Texas law. *Dahl v. Akin*, 645 S.W.2d 506, 515 (Tex.App.—Amarillo 1982), *aff'd*, 661 S.W.2d 917 (Tex. 1983). Therefore, pursuant to Section 26, Article XVI, Texas Constitution as defined by §41.003(b), TEXAS CIVIL PRACTICES AND REMEDIES CODE, Plaintiff Billy Smith seeks exemplary damages in an amount which is reasonable and just to the jury.

80. As a direct, proximate, and producing result of Defendants' gross negligence and malice, Plaintiff Billy Smith is entitled to exemplary damages pursuant to Section 41.001 et. seq. of the TEXAS CIVIL PRACTICES AND REMEDIES CODE.

## **ATTORNEY FEES**

81. It was necessary for Plaintiff to hire the undersigned attorneys to file this lawsuit. Upon judgment, Plaintiff is entitled to an award of attorney fees and costs under 42 U.S.C. § 1988(b).

## **PRAYER FOR RELIEF**

82. For the reasons stated above, Plaintiff Billy Smith asks for judgment against Defendants for the following:

A. Actual Damages in an amount to be proved at trial;

B. Punitive damages in an amount deemed appropriate to punish those Defendants lawfully susceptible to punitive damages;

C. Exemplary damages against all defendants as set forth above and as determined by the jury;

D. Prejudgment and postjudgment interest;

E. Costs of suit, including attorney fees; and

F. All other, further and different relief as this Court deems just and proper.

**DATED this 15th day of August, 2007.**

Respectfully Submitted,

By: ______________________

GLASHEEN, VALLES & DEHOYOS, L.L.P.
KEVIN GLASHEEN
State Bar No. 08001510
1302 Texas Ave. (79401)
P.O. Box 1976
Lubbock, Texas 79408
Telephone: (806) 741-0284
Facsimile: (806) 763-2146

ATTORNEYS FOR THE PLAINTIFFS

ORIGINAL

JS 44 (Rev. 3/99)

3-07CV1413-R

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

SMITH, BILLY J.

**DEFENDANTS**

City of Dallas
Mercer, James
McMillion, Donald
Kemp, Michael
Anderson, Aaron
Wilson, Howard

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF: Dallas
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT: Dallas
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

RECEIVED
AUG 16 2007
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Glasheen, Valles, & Dehoyos, L.L.P
Kevin Glasheen, Attorney of Record
P.O. Box 1976 Lubbock, Texas 79408
(806) 741-0284

ATTORNEYS (IF KNOWN)

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(PLACE AN "X" IN ONE BOX ONLY)*

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury — Med. Malpractice
- ☐ 365 Personal Injury — Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☒ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence

HABEAS CORPUS:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS — Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions

**V. ORIGIN** *(PLACE AN "X" IN ONE BOX ONLY)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

28 U.S.C. Sec. 1983. This is a civil rights and malicious prosecution action for money damages arising under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States resulting from the wrongful imprisonment, prosecution, and conviction of Billy James Smith.

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE ______ DOCKET NUMBER ______

DATE: 8/15/07

SIGNATURE OF ATTORNEY OF RECORD: Kevin Glasheen

FOR OFFICE USE ONLY

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______